UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| HENRY GONZALEZ-VALASQUEZ, | ) |
| | ) |
| | ) |
| v. | ) No. 1:07-cr-76/1:09-cv-87 |
| | ) *Judge Mattice* |
| UNITED STATES OF AMERICA | ) |

### **MEMORANDUM**

Henry Gonzalez-Valasquez ("Valasquez") timely filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Criminal Court Doc. 74).[1] Valasquez subsequently filed a motion to supplement his § 2255 motion to include an additional argument attacking his consecutive sentences. In this motion he relies on the Sixth Circuit's opinion in *United States v. Almany,* 598 F.3d 238 (6th Cir. 2010) which was subsequently vacated and remanded by the Supreme Court of the United States in *United States v. Almany*, 131 S.Ct. 637 (2010) (Criminal Court Doc. 89). Valasquez contends, *inter alia*, that he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution (Criminal Court Doc. 74). The Government opposes both the motion and the motion to amend (Criminal Court Docs. 85, 92).

The motions, together with the files and record in this case, conclusively show Valasquez is entitled to no relief under 28 U.S.C. § 2255. For the reasons which follow, the Court has determined an evidentiary hearing is unnecessary, *see United States v.*

---

[1] Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

*Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993), and concludes that Valasquez's § 2255 motion will be **DENIED** for lack of merit (Criminal Court Doc. 74).

I. PROCEDURAL BACKGROUND

On June 12, 2007, a grand jury sitting in the Eastern District of Tennessee, Chattanooga Division, filed a four-count Indictment charging Valasquez, Tanya Coon, and Timothy Queen as co-defendants. Valasquez was charged in the first three counts. Count One alleged that from June 2005 through June 2007, the defendants conspired to possess with intent to distribute 500 grams or more of a mixture containing methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). Count Two alleged that on June 4, 2007, Valasquez possessed 50 grams or more of a mixture containing methamphetamine, in violation of 21 U.S.C. § 841(b)(1)(B). Finally, Count Three alleged that on June 4, 2007, Valasquez possessed a firearm in furtherance of the drug trafficking offenses charged in Counts One and Two, in violation of 18 U.S.C. § 924(c).

After initially entering a not guilty plea on June 21, 2007, Valasquez chose to plead guilty to Count One and Count Three on December 4, 2007 (Criminal Court Doc. 78, Plea Hr'g. Tr.). As part of a plea agreement, Count Two was dismissed. On March 31, 2008, the Court sentenced Valasquez to an aggregate term of 180 months of imprisonment: the mandatory minimum of 120 months for the drug offense, followed by the statutorily-mandated 60 months for violating § 924(c) (Criminal Court Doc. 79, Sentencing Hr'g Tr.). No direct appeal was filed.

The United States Sentencing Guidelines were used to calculate Valasquez's offense level in his presentence investigation report ("PSR"). The base offense level

was 32, based on USSG § 2D1.1. A two-level enhancement was imposed for obstruction of justice in relation to Valasquez's reckless escape attempt. After a three-level reduction for acceptance of responsibility, his total offense level was 31. Valasquez had zero criminal history points, placing him in Category I. As a level 31/category I offender, Valasquez's advisory Guidelines range was 108 to 135 months; however, due to the mandatory statutory minimum, the effective range for imprisonment was 120 to 135 months. Further, Valasquez faced an additional mandatory minimum sentence of 60 months for his violation of § 924(c). Thus, the total effective range for imprisonment was 180 to 195 months.

The Court sentenced Valasquez to the lowest possible sentence of 180 months of incarceration (Criminal Court Doc. 79). Valasquez did not pursue a direct appeal but he subsequently filed this § 2255 motion (Criminal Court Doc. 74).

## II. STANDARD OF REVIEW

This Court must vacate and set aside a sentence if it finds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, . . ." 28 U.S.C. § 2255.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law

without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). To warrant relief for a nonconstitutional error, there must be a showing of a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

Further, a § 2255 motion is not a substitute for a direct appeal and it cannot serve as an appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States. v. Timmreck*, 441 U.S. 780, 784 (1979); *Grant,* 72 F.3d at 506; *United States v. Walsh*, 733 F.2d 31, 35 (6th Cir. 1984). Thus, Valasquez cannot use a § 2255 motion to litigate issues that should have been presented and decided on direct appeal unless (1) cause is shown for the tardy challenge and (2) actual prejudice resulting from the error is demonstrated. *United States v. Frady*, 456 U.S. 152, 167-68 (1982). Alternatively, Valasquez could raise such issues if he can show that he is actually innocent of the crime. *See Bousley*, 523 U.S. at 622.

4

## III. FACTS

The following pertinent facts are taken from the Presentence Investigative Report (PSR) prepared by the United States Probation Office:

7. On June 4, 2007, officers with the 10th Judicial District Task Force stopped a vehicle driven by Cameron Jerome White for having an invalid temporary license tag. Henry Gonzalez-Valasquez was also in the vehicle in the passenger side seat. Upon contact with the driver, the officer noticed both White and Valasquez behaving nervously. While attempting to establish their identities, the officer asked Mr. White and received consent to search the vehicle. Upon searching the vehicle, officers located 11 ounces of methamphetamine, digital scales, and a loaded .25 caliber handgun behind the glove box.

8. Each individual was arrested and advised of his rights. Valasquez admitted to being paid to deliver the methamphetamine to a female at a motel. He stated that he had gotten White to drive him but that White was unaware of the drug transaction. During the interview, Valasquez received a text message from "Lynette 3" who was the customer that Valasquez was to deliver the 11 ounces of methamphetamine to. Valasquez agreed to help law enforcement deliver the methamphetamine to the customer and arranged to meet at the Wal-Mart in Athens, Tennessee.

9. Agents established surveillance at the Wal-Mart and observed Timothy Queen and Tanya Lynette Coon arrive on a motorcycle. Valasquez called Ms. Coon and arranged the meeting for 10 minutes later. Coon went inside the store and Queen drove around the parking lot on his motorcycle. Eventually Queen drove up to the vehicle occupied by Valasquez who was accompanied by an undercover police officer. After Queen and Valasquez began talking, Valasquez lunged for the officers' taser and began screaming "Police, Police." Valasquez then jumped out of the car and got onto the backseat of Queen's motorcycle and they fled. Officers gave chase at a high rate of speed which ended when Queen crashed the motorcycle into a stone wall. Queen was seriously injured. Valasquez attempted to flee on foot but was quickly apprehended. After his arrest, Queen was searched and found to be in possession of $8,000 cash. Law enforcement then located Coon and arrested her.

10. After her arrest, Coon waived her *Miranda* rights and provided law enforcement with a statement. Coon advised that she and Queen were at the Wal-Mart to buy methamphetamine from Valasquez. She stated that Queen had bought from Valasquez one other time and that she had personally been dealing with Valasquez for at least 1 ½ years. She advised that she purchased methamphetamine from Valasquez in Chattanooga, Tennessee and Georgia between 15 and 30 times. At first, she bought ½ to one ounce quantities per

5

occasion, but the last 10 times involved anywhere between three and nine ounces.

(PSR at 3-4).

## IV. ANALYSIS

Valasquez's § 2255 motion to vacate contains six claims. Valasquez raises three claims relating to the sufficiency of evidence and translation services and three claims of ineffective assistance of counsel. The Court will address each of these claims in turn. Finally, the Court will consider Valasquez's additional claim included in his amended § 2255 petition objecting to his consecutive minimum terms.

### A. Procedurally Defaulted Claims

As a threshold matter, Valasquez has forfeited his right to make certain claims, as they could have been raised on direct appeal and are now procedurally defaulted as a result of his failure to do so. This forfeiture is subject to the caveat that the Court may review otherwise defaulted claims if the movant can demonstrate either that (1) he had good cause for not raising the arguments earlier and would suffer actual prejudice if they were not reviewed, or (2) that he is actually innocent of the offense. *Hicks v. United States*, 258 F. App'x 850, 852 (6th Cir. 2007). *See also Bousley*, 523 U.S. at 622; *Frady*, 456 U.S. at 167-68; *Peveler v. United States*, 269 F.3d 693 (6th Cir. 2001). This exception does not apply in Valasquez's case, as his sole justification for failing to file a direct appeal is that he was unaware that he had a right to do so. Contrary to this assertion, the Court made express reference to Valasquez's option to file a direct appeal and the timeframe within which to do so during his sentencing hearing:

> Mr. Gonzalez-Valasquez, . . . you have the right to appeal the sentence that I've just imposed in your case. If you wish to do so, you must file a document that is known as a notice of appeal within 10 days after the entry of judgment . . . .

6

> [Defense counsel] can tell you when the judgment is filed, thus triggering your appeal rights . . . . If for any reason [defense counsel] does not help you, the clerk of the Court can provide you with the documents for both a notice of appeal and an IFP application.

(Criminal Court Doc. 79). Having failed to show good cause and prejudice or, alternatively, actual innocence, Valasquez's claims not pertaining to effectiveness of counsel must be adjudged procedurally defaulted. In addition to this procedural hurdle, Valasquez's defaulted claims lack merit. The Court will briefly review each of these claims.

### 1. *Buyer-Seller Claim*

First, Valasquez argues that his offense conduct did not constitute a conspiracy but rather amounted only to a buyer-seller relationship. Mere buyer-seller relationships do not necessarily indicate conspiracy, because "mere sales do not prove the existence of the agreement that must exist for there to be a conspiracy." *United States v. Cole*, 59 Fed. Appx. 696, 699 (6th Cir. 2003). However, the Sixth Circuit has concluded that evidence of advanced planning and multiple transactions involving large quantities of drugs may show that the defendant was involved in a conspiracy rather than a mere buyer-seller relationship. *See United States v. Nesbitt*, 90 F.3d 164, 167 (1996). *See also United States v. Anderson*, 89 F.3d 1306, 1310 (6th Cir. 1996) (holding that repeat purchases, purchases of large quantities or other enduring arrangements are sufficient to support a conspiracy conviction).

In the instant case, Coon's unchallenged statement to officers at the time of her arrest, as detailed in Valasquez's PSR, establishes that Valasquez engaged in repeated sales of sizable quantities of methamphetamine to Coon, which is sufficient to establish the requisite conspiratorial relationship. *See Anderson*, 89 F.3d at 1310. Further,

Valasquez's argument as to the sufficiency of evidence against him is rendered moot by his guilty plea: "This Circuit has specifically interpreted rule 11(a)(2) to bar a defendant's challenge that evidence was insufficient to support a conviction, absent a conditional plea that specified the issue for preservation on appeal." *United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008). At Valasquez's plea hearing, the Court enumerated the elements of the offense that the prosecution would have needed to prove to secure a conviction had Valasquez proceeded to trial:

> In order to convict you on Count One of the indictment, the government would be required to prove at least three or four things beyond a reasonable doubt in order to convict you. . . . [T]hat you conspired or acted with others, that you acted knowingly or intentionally to possess a controlled substance, and in this case methamphetamine, with the intent to distribute that methamphetamine. . . . Do you understand that?

(Criminal Court Doc. 78). Valasquez's response to the Court's question was unequivocal: "That's right." (*Id.*) In addition Valasquez agreed with the government's factual basis for his plea which included a co-defendant's statement that she had conspired with Valasquez and bought methamphetamine from him between 15 and 30 times in Chattanooga and Georgia (Criminal Court Doc. 78, p. 22). As such, Valasquez was involved in more than a mere buyer-seller relationship; therefore, he was properly convicted for his participation in a conspiracy and this claim is without merit.

    2.  <u>*Conspiracy Conviction Constitutes a "drug trafficking crime" under § 924(c)*</u>

Valasquez next argues that the conspiracy for which he was convicted was not a "drug trafficking crime" under § 924(c), because the statutory provision criminalizing drug conspiracies (21 U.S.C. § 846) does not explicitly reference "the overt act of possession with intent to distribute" (Criminal Court Doc. 76,). However, under

8

§ 924(c)(2), a drug trafficking crime is defined as "any felony punishable under the Controlled Substances Act" (hereinafter sometimes referred to as the "CSA"). That Act criminalizes the possession of more than 500 grams of a mixture containing methamphetamine. 21 U.S.C. § 841(b).

Further, it allows for punishment of a conspiracy to commit any of the enumerated offenses of the Act, "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. Thus, a conspiracy to distribute and possess with the intent to distribute a mixture containing methamphetamine is, in fact, a felony punishable under the CSA as § 924(c)(2) requires. Accordingly, this claim offers Valasquez no relief.

### 3. *Interpreters' Translation Services via Telephone*

Third, Valasquez alleges a violation of his "right to confrontation," since his Spanish interpreters participated by telephone rather than being physically present for his hearings (Criminal Court Doc. 76). Valasquez cites 28 U.S.C. § 1827(d)(1), which provides for the use of a qualified interpreter in court proceedings if a party "speaks only or primarily a language other than the English language . . . so as to inhibit [his] comprehension of the proceedings or communication with counsel or the [court]." That statute, however, makes no reference to a requirement that the interpreter be physically present in the courtroom. Further, the Eighth Circuit has indicated that the physical absence of an interpreter does not raise an issue of due process. *See, e.g., United States v. Castro-Higuero*, 473 F.3d 880, 886 (8th Cir. 2007) (explaining that a waiver of

*Miranda* rights following an interpreter's translation by phone was sufficient, since the defendant could communicate effectively through the interpreter and understood what was being said).

Moreover, the confrontation clause of the Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]"  U.S. Const. amend VI. The Confrontation Clause is inapplicable to Valasquez's contention, because the interpreter was not a witness against him.  Accordingly, this claim is frivolous as Valasquez's Sixth Amendment Confrontation Clause rights were not violated when the interpreter translated by phone rather than in person.

To the extent Valasquez claims counsel was ineffective for not pursuing these three procedurally barred claims, he is incorrect, as counsel is not required to raise a meritless argument to avoid a charge of ineffective assistance of counsel.  *Ludwig v. United States*, 162 F.3d 456, 458 (6th Cir. 1998).  Thus, under either an ineffective assistance of counsel theory or standing alone as Valasquez raised them, no relief is warranted.

### B. Ineffective Assistance of Counsel

Valasquez submits three claims which the Court will address separately as sub-claims under the claim of ineffective assistance of counsel. The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  This right extends beyond the mere presence of counsel to include "reasonably effective assistance" of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  To establish a claim

of ineffective assistance, Valasquez must demonstrate two essential elements: (1) that counsel's performance was deficient, that is, below the standard of competence expected of attorneys in criminal cases; and (2) that counsel's deficient performance prejudiced the defense, i.e. deprived the defendant of a fair trial, rendering the outcome of the trial unreliable. *Id.* at 687-88.

With regard to plea proceedings, Valasquez must show that but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer,* 64 F.3d 110, 118 (3rd Cir.1995). Under *Strickland*, review should be deferential and maintain a strong presumption in favor of finding counsel's conduct within the wide permissible range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

As an initial matter, the Court observes that Valasquez has failed to meet the prejudice prong as to any of his claims because although he alleges that he would have insisted on a jury trial "had [he] known what he has learned about his case" he qualifies that as he further states "or at the very least he would have insisted on an appeal." (Criminal Court Doc. 76, p. 12). Nevertheless, as explained herein, none of Valasquez's claims have merit, thus he has failed to present evidence apart from his lone assertion that he would have proceeded to trial but for counsel's alleged errors. Thus, Valasquez has failed to fulfill his burden of proving that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v.*

11

*Lockhart,* 474 U.S. at 59. Furthermore, as explained below, Valasquez has failed to demonstrate counsel was ineffective.

In his § 2255 motion, Valasquez raises three claims against counsel. First, Valasquez complains that counsel misadvised him of the statutory maximum prison sentence for his § 924(c) violation. Second, Valasquez contends his guilty plea was coerced because counsel told him he could receive a life sentence. Third, Valasquez asserts that counsel was ineffective for advising against pursuing a direct appeal.

### 1. *Advice Regarding Maximum Prison Sentence for § 924(c)*

Valasquez argues that counsel erred in advising him that his § 924(c) violation carried a maximum sentence of life imprisonment. In *Harris v. United States,* 536 U.S. 545, 578 (2002), the dissenting opinion by Justice Thomas, with whom Justice Stevens, Justice Souter, and Justice Ginsburg joined, stated that "anyone convicted of violating § 924(c)(1)(A) is theoretically eligible to receive a sentence as severe as life imprisonment." In this case, the government specifically announced that count one to which Valasquez pleaded guilty carried a term of imprisonment of not less than ten years "up to a statutory maximum of life[,]" and that count three carried a term of imprisonment of not less than five years to life (Criminal Court Doc. 78). Consequently, it does not appear that counsel erred as each of Valasquez's convictions carried a statutory maximum of life imprisonment and the Court had the authority to impose any sentence up to the applicable statutory maximum. Consequently, there was no error regarding notification of the maximum sentence to which he was exposed.

Nevertheless, assuming counsel erred in advising Valasquez as to his sentencing exposure, no prejudice has been shown as Valasquez has not

12

demonstrated he would have proceeded to trial but for counsel's alleged erroneous advice. Accordingly, Valasquez has not demonstrated he suffered any prejudice as the result of counsel's alleged erroneous sentencing advice.

### 2. *Informed, Voluntary Guilty Plea*

Valasquez also asserts that his guilty plea was coerced, because counsel told him he could receive a life sentence. Certainly, counsel's assertion could neither be adjudged deficient nor could it have prejudiced Valasquez's plea decision under the *Strickland* test if it was merely an accurate statement of the potential maximum sentence Valasquez was facing. Counsel simply provided Valasquez with the information needed to make an informed plea. As discussed above, this information was accurate, as to the counts of the indictment to which Valasquez was pleading. Moreover, the prosecution advised Valasquez of the maximum penalty of life imprisonment for both Counts One and Three at his plea hearing, and the Court advised Valasquez that his sentence would be determined after the Court received his PSR and after a sentencing hearing. The Court reiterated that it was possible for his sentence to be anywhere within "the range that was just mentioned by the Assistant United States Attorney[,]" but no one would know his actual sentence until his sentencing hearing (Criminal Court Doc. 78). Nevertheless, Valasquez acknowledged he was pleading guilty because he was in fact guilty (Criminal Court Doc. 78).

Further, the record reflects Valasquez's plea was fully informed and he admitted in his plea agreement that the Court could impose any sentence up to the statutory maximum of life imprisonment (Criminal Court Doc. 78, p. 10). The Court accepted the guilty plea, finding that "[Valasquez] is fully competent and capable of entering an

13

informed plea, and that his plea of guilty is a knowing and voluntary plea . . . ." (*Id.,* p. 23). Thus, Valasquez's claim of ineffective assistance of counsel with regard to his guilty plea is meritless and relief will be **DENIED**.

### 3. Direct Appeal

Finally, Valasquez faults counsel for not filing a direct appeal on his behalf and for persuading him that such an appeal would likely be ineffectual. Electing not to file an appeal is professionally unreasonable only where a rational defendant would want to make an appeal or where a particular defendant reasonably demonstrated to counsel an interest in doing so. *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). For the reasons detailed above, Valasquez's various contentions are without merit and provide no ground for appeal. Valasquez has failed to establish that counsel had any legitimate basis upon which to contest his guilty plea on appeal. *See, e.g.*, *Maples v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999) ("Counsel could not be constitutionally ineffective for failing to raise . . . meritless arguments").

Additionally, the record does not reflect any reason for counsel to have believed Valasquez wished to file a direct appeal. By stating that he "would have" asked counsel to file an appeal, Valasquez concedes that he did not ask counsel to do so (Criminal Court Doc. 76). Even assuming counsel did not adequately consult with him regarding appeal rights, Valasquez fails to show that he suffered prejudice, that is, but for counsel's deficiency, he would have pursued an appeal. Valasquez has failed to identify any nonfrivolous ground for appeal or to establish that he promptly expressed a desire to appeal. As such, Valasquez has not met the two-part test under *Strickland*, and there is no basis upon which this Court may grant relief.

### C. Motion to Amend

In his motion to supplement, Valasquez raises the additional argument that his consecutive mandatory minimum sentence of five years for violating § 924(c) should be set aside in light of the Sixth Circuit's holding in *United States v. Almany*, 598 F.3d 238 (6th Cir. 2010) (Criminal Court Doc. 89). In that case, the Sixth Circuit held that the defendant, who had been sentenced to a ten-year minimum sentence under a drug statute, could not also be sentenced to the mandatory minimum of five years for a § 924(c) violation. *Id.* at 242. The Supreme Court, however, expressly overruled that decision, stating that "a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction." *Abbott v. United States*, 131 S.Ct. 18, 23 (2010). As a result, Valasquez's argument in his motion to supplement is also without merit. Accordingly, Valasquez's motion to amend will be **DENIED** as futile (Criminal Court Doc. 89).

### D. Motions to Rule

Valasquez's motions requesting the Court to rule on his § 2255 motion are **MOOT** (Criminal Court Docs. 93, 94).

### V. CONCLUSION

For the reasons set forth above, the Court concludes Valasquez is not entitled to any relief under 28 U.S.C. § 2255; thus his § 2255 motion will be **DENIED** (Criminal Court Doc. 74). Further, Valasquez's motion to amend will be **DENIED** as futile (Criminal Court Doc. 89) and his motions requesting the Court to rule on his pending motions are **MOOT** (Criminal Court Docs. 93, 94).

In addition, this Court **CERTIFIES** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, any application by Valasquez for leave to proceed *in forma pauperis* on appeal will be **DENIED**. Fed. R. App. P. 24.

Further, Valasquez has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253; Fed. R. App. P. 22(b), or that reasonable jurists would disagree on the resolution of this matter. Thus, a certificate of appealability **SHALL NOT ISSUE**. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

An appropriate judgment will enter.

                                        *s/ Harry S. Mattice, Jr.*
                                        HARRY S. MATTICE, JR.
                                        UNITED STATES DISTRICT JUDGE